# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 3, 2014

## STATE OF TENNESSEE v. PAUL EDWARD MARTIN, JR.

**Appeal from the Circuit Court for Chester County**
**No. 12CR-68      Nathan B. Pride, Judge**

**No. W2013-02311-CCA-R3-CD  - Filed October 10, 2014**

The defendant, Paul Edward Martin, Jr., was convicted by a Chester County Circuit Court jury of carjacking and aggravated robbery, Class B felonies, and sentenced to terms of twenty years on each conviction, to be served consecutively as a Range II offender in the Tennessee Department of Correction.  On appeal, he argues that the trial court imposed an excessive sentence.  After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN, J., joined.  JEFFREY S. BIVINS, J., Not Participating.

Kandi Kelley Collins, Assistant Public Defender, for the appellant, Paul Edward Martin, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; James G. Woodall, District Attorney General; and Benjamin C. Mayo, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant was indicted for especially aggravated kidnapping, carjacking, and aggravated robbery, as a result of his approaching the seventy-three-year-old victim, Charlotte Kast, in her driveway and having her drive him to town.

The proof at trial showed that, on August 8, 2012, the victim was preparing to drive into town to run errands when she was confronted by the defendant, age twenty-eight at the time, in the driveway of her home.  The defendant asked the victim if she would give him a

ride into town. The victim, who did not know the defendant, was "afraid" but agreed to give him a ride out of the goodness of her heart. When they reached town and stopped at the first traffic signal, the victim expected the defendant to get out but, instead, he asked her to drive him further up the road to Mifflin Avenue.

The victim "started to feel kind of [a] sick scary feeling" and told the defendant that she was supposed to meet her son for lunch. However, she did not feel free to tell the defendant "no," so she drove on. At Mifflin Avenue, the defendant told the victim to turn on Second Street, which led to a dead end. Once there, the defendant told the victim to stop the car. When she stopped the car, the victim glanced over and noticed that the defendant had a gun propped on his leg. The victim tried to escape several times during the ordeal by grabbing her purse and car keys, but the defendant told her "no." The defendant pointed the gun at the victim and told her to remove her shorts and underwear "because he wanted to see it." The defendant complained that the victim was taking too long to remove her clothes, so he told her "to put [her] shorts and [her] panties back on and to get out of the car." The defendant kept the victim's purse and car keys, and the victim "took off going down the street knocking on a couple of houses" to summon for help. The defendant drove away in the victim's car. The victim recalled that the gun the defendant was armed with was black with a silver stripe down the center of it. She believed it to be a real weapon.

Officer Gary Davidson, a criminal investigator with the Henderson Police Department, explained that the defendant did not help locate the victim's car. Rather, the car was recovered after an individual reported seeing it in a wooded area behind a vacant lot where a house had been burned. The victim's purse was not in the car. However, the defendant later showed the police where he had thrown the purse, and it was found twenty-five to thirty feet in front of the victim's car. Officer Davidson explained that, when they originally went to the area to look for the victim's car, they also conducted a search of the area to look for her purse but missed it because it was "very camouflaged." The gun and car keys were never found. The defendant turned himself in after a warrant was issued for his arrest.

Chief Deputy Mark Griffin of the Chester County Sheriff's Office testified that the defendant agreed to make a statement after being advised of his rights. In his statement, the defendant admitted to, while in possession of a BB gun, "walk[ing] up to a woman who was getting into her car" and asking her for a ride into town. As they were in the car, he noticed that the victim's purse was on the floor board of the car. He

> figured there was some money in it. I had the gun in my lap. The right side of the BB gun was damaged so I held it so that she couldn't see the damage because she would have known that the gun wasn't real.

-2-

> I told her to empty her pockets. She had on some shorts. She said she didn't have anything. I told her to get out. She did. I took her car and drove it back to a yard by the railroad tracks where I parked it.
>
> I got five dollars from her purse and threw the purse out on the ground to the left of where I parked the car. I don't remember what I did with the keys. I gave the BB gun to a white man walking on North Franklin. I walked home through the cemetery so no one would see me and I changed clothes when I got there.

The defendant admitted that he showed the BB gun to someone named Victor the day before who thought it was a real gun. As for his reason for committing the robbery, the defendant indicated that he did not have money to pay his rent and had tried to "come up with" money by gambling the night before the crimes but had lost.

Following the conclusion of the proof, the jury found the defendant not guilty of especially aggravated kidnapping but guilty of carjacking and aggravated robbery.

Later, the trial court conducted a sentencing hearing, at which the defendant's presentence report was admitted without objection, following a correction to one of the defendant's prior convictions. Specifically, the defendant's conviction for vandalism over $500 committed on July 2, 2006, was corrected to vandalism over $1,000. Judgments were also admitted for seventeen of the defendant's prior convictions. The presentence report indicated that the defendant had thirty-one prior convictions, including thirteen felony and thirteen Class A misdemeanor convictions. The report also indicated that the defendant had four juvenile adjudications for burglary, among other things. It additionally appears that the defendant had his probation revoked on April 14, 2008, on a concurrent six-year sentence that had been imposed on January 8, 2007, for burglary other than a habitation, vandalism over $500, vandalism over $1,000, theft over $500, and theft over $1,000.

The victim testified concerning the impact the crimes had on her. She said that, prior to the crimes, she lived independently and comfortably in her home by herself. However, after the crimes, she became afraid to go places on her own and moved to another residence.

Chief Deputy Griffin testified that, even though the defendant turned himself in and helped locate the victim's purse, the defendant was not entirely cooperative. He recalled that the day immediately following the crimes, he and another officer questioned the defendant about the crimes, and the defendant "denied any knowledge of it." The defendant never told them what he did with the keys to the victim's car.

At the conclusion of the hearing, the trial court imposed terms of twenty years on each of the defendant's convictions, to be served consecutively.

**ANALYSIS**

The defendant argues that the trial court imposed an excessive sentence. He asserts that it was error to sentence him to the maximum term on each offense and order that they be served consecutively because consecutive sentences were not mandatory and "he admitted to the authorities his crimes, and expressed remorse for his actions, and even assisted the authorities in locating the victim's purse." He also claims, with regard to the majority of convictions in his criminal history, that "he was either drunk or high and trying to support his drug habit, or in this case trying to get money to provide for his family."

The length of a sentence "within the appropriate statutory range [is] to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). In determining the proper sentence, the trial court must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991); State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

Generally, challenges to a trial court's application of enhancement and mitigating factors are reviewed under an abuse of discretion standard. Bise, 380 S.W.3d at 706. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Id. at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id.

Additionally, the trial court may order multiple sentences to run consecutively if it finds by a preponderance of evidence that one or more of the seven factors listed in the Tennessee Code Annotated section 40-35-115(b) apply, including that the defendant is an offender whose record of criminal activity is extensive. Id. § 40-35-115(b)(2). As to consecutive sentencing, our standard of review is abuse of discretion with a presumption of

reasonableness.  State v. Pollard, 432 S.W.3d 851, 860 (Tenn. 2013).

In sentencing the defendant, the trial court read the defendant's prior convictions into the record and enhanced the defendant's sentence based on his record of criminal convictions, giving great weight to the factor.  Tenn. Code Ann. § 40-35-114(1).  Recalling the victim's testimony at trial, the court determined that the victim was particularly vulnerable because of her age and gave great weight to that factor.  Id. § 40-35-114(4).  The court gave slight weight to the defendant's failure to comply with the conditions of a sentence involving release into the community.  Id. § 40-35-114(8).  The court gave great weight to the defendant's possession or employment of a firearm or other deadly weapon during the commission of the offense.  Id. § 40-35-114(9).

The trial court considered the defendant's arguments in favor of two mitigating factors, that he was motivated by a desire to provide for necessities for himself or his family and that he assisted the authorities in recovering some of the stolen property.  See id. § 40-35-113(7), (10).  Specifically, the court gave "very, very slight weight, if any," to the defendant's motivation to provide necessities for himself or his family, observing that instead of getting a job and "trying to work hard he decided that he would take advantage of a 73 year old lady."  The court gave moderate weight to the defendant's having helped recover the victim's purse, although noting that he did nothing to assist the authorities in locating the victim's car, keys, or the gun used in the commission of the offenses.

The trial court determined that the defendant's sentences should be served consecutively based on the defendant's extensive record of criminal activity.  Tenn. Code Ann. § 40-35-115(2).  The court elaborated that:

[The defendant] has had a record, he has over 30 offenses.  He's 28 years old. He has an offense for every year of his life.  The Court would call that certainly an extensive criminal record.

From 18 until 28 he's been convicted of multiple offenses.  A lot of those offenses were a lot more seriously charged than what the ultimate conviction was, but nonetheless the Court finds that that factor alone is enough to believe that [the defendant] should be sentenced to consecutive sentences in this particular case.

As we have detailed above, the trial court thoroughly stated its reasons and rationale for imposing twenty-year consecutive sentences, and those reasons are supported by the record and consistent with the principles and purposes of sentencing.  The defendant has, therefore, failed to overcome the presumption that his sentences are reasonable.

-5-

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE